UNITED STATES of America, Plaintiff–Appellee,

v.

Mark TURNER, Defendant–Appellant.

No. 92–5671.

United States Court of Appeals, Sixth Circuit.

Argued March 26, 1993.

Decided June 11, 1993.

. James E. Arehart, James Zerhusen (argued and briefed), Asst. U.S. Attys., and Karen K. Caldwell, U.S. Atty., Office of the U.S. Atty., Lexington, KY, for plaintiff-appellee.

John K. West (argued and briefed), McCoy, Baker & Newcomer, Lexington, KY, for defendant-appellant.

Before: KENNEDY and MILBURN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

. Defendant–Appellant, Mark Turner, has appealed from his conviction for destruction of a building by fire and for causing personal injury in violation of 18 U.S.C. § 844(i). After a jury trial, Turner was found guilty and sentenced to a term of 112 months and ordered to make restitution in the amount of $48,592.75. ·

During late 1990 and early 1991, Mark Turner occupied a residence at 633 South Broadway in Georgetown, Kentucky with his girlfriend, Mary Jo Downey, her two children and her mother, Dorothy Wright. The building and real property at 633 South Broadway were owned by Philip Hudson. After a dispute with Hudson over back rent, Downey and her mother and children vacated the residence sometime in late January or early February of 1991. Turner, who was away on a trucking job, returned to discover that Downey had been evicted and that he could no longer live at 633 South Broadway. He moved first to his niece's home and then on to his sister and brother-in-law's home.

In the early morning on February 15, 1991, a fire occurred in the building at 633 South Broadway, which was unoccupied at the time. The fire quickly spread to the adjacent occupied residence next door at 631 South Broadway. Mary Ann Parris who lived in a garage apartment behind the two buildings was awake that morning. When the flames became visible at 633 South Broadway, she alerted the residents of the adjacent building who vacated the premises unharmed.

Firefighters arrived at the scene at 5:28 a.m. and found that both buildings were on fire. In all, nine fire units responded to the fire at South Broadway. By the time the fire was contained, the entire structure at 633 South Broadway and two-thirds of the adjacent residence had been destroyed. Although the residents of 631 South Broadway escaped without injury, four firemen suffered injuries as a result of their efforts in fighting the fire.

Two days later, on February 17, 1991, Turner appeared at the Scott County Fire Department to volunteer information about an arsonist. He spoke with Major John Norman who was in charge of the station at that time and he told Norman that he could identify the arsonist who had set the fire at 633 South Broadway. Turner described how the fire had been ignited in an upstairs bathroom with matches that had been taken from the Marriott Hotel. Turner also told Norman that he had once lived in the house and that he had suffered the loss of personal belongings as a result of the fire, including a desk valued at $4500. In addition, he claimed to have been offered "five" to burn the house which he refused but that the arsonist who set the fire got "25." J.App. at 458.

At Norman's suggestion, Turner agreed to speak with Captain Ed Moore of the Georgetown Fire Department. Turner then related the same information to Moore that he had conveyed to Norman. The three agreed that they should meet the next day and examine the fire scene together. Turner did not meet with Norman and Moore as planned on February 20, 1991, but the next day, the two firemen found him at a laundry and accompanied him to the fire site. On the way, Turner became unresponsive and disclaimed any knowledge about the fire. He denied that he knew any details about the fire except that it had been caused by a kerosene heater and that he had personally lost valuable property as a result of the incident. At trial, both firemen testified that they found no evidence of a $4500 desk having been destroyed in the fire.

On the day prior to the firemen's investigation of the site with Turner, Herbert Miller, an arson analyst, had inspected the fire site at 633 South Broadway. He collected samples taken from the remains of an area in a second story bathroom that evidenced intense burning. The specimens were found to contain a heavy petroleum distillate by the toxicologist, Michael Evans. From his investigation and the Evans report, Miller concluded that the fire's origin had been in the upper right rear bathroom and that an accelerant had been used to ignite the fire. He ruled out any accidental or electrical causes.

Over the course of the next month, Turner commented to other individuals about the fire. He told Vicki Lynn Morgan with whom he was living at the time that he used to reside at 633 South Broadway. He denied, however, that he was present when the building burned or that he knew anything about how the fire originated. He did admit, though, that he disliked the owner of the building who he claimed was attempting to blame him for causing the fire. On a second occasion, Turner told Roger Arnett about a house he had burned. Arnett testified that Turner did not specifically identify the house as 633 South Broadway, but that Turner did say it was yellow and located on Broadway. The building at 633 South Broadway was a yellow frame house.

At trial, Turner presented an alibi defense claiming that he had been at his sister's house all day on both February 14 and 15, 1992. In addition to Turner, his brother-in-law, Tommy David Wright, Sr.; his niece, Crystal Wright; and her friend, Dorothy Collins, offered supporting testimony. They all stated that on the morning of February 15, 1991, when the fire occurred at 633 Broadway, Turner was asleep at his sister's house. A rebuttal witness for the govern-

ment offered a taped interview with Crystal Wright in which she stated that she did not know where Turner was on the day of the fire, but that he was not in town. Following the jury's guilty verdict, Turner filed a motion for a new trial based upon evidence which disclosed that his former girlfriend, Mary Jo Downey, had threatened to burn the house at 633 South Broadway. Turner's motion was denied. At sentencing, Turner objected to the calculation of his base offense level because, in his opinion, the offense did not involve the destruction or attempted destruction of a dwelling, nor did it knowingly place any person, other than the perpetrator, at risk of death or serious bodily injury. The district court denied both of these motions and imposed a sentence of 112 months.

In his first assignment of error, Turner asserted that the indictment against him charging a violation of 18 U.S.C. § 844(i) should have been dismissed for lack of subject matter jurisdiction because the statute required proof that the destroyed property was involved in interstate commerce, which evidence the government had failed to produce. Specifically, Turner charged that the United States had failed to prove that the building in question was rental property at the time of the fire and that as a result thereof no link to interstate commerce had been developed. It was conceded that the residence was vacant when the fire occurred, but the government developed evidence that it had been a rental property since it was purchased by Philip Hudson and that Hudson intended to re-let the building as soon as repairs and renovations were completed.

Rental properties constitute a sufficient nexus to interstate commerce for federal jurisdiction to attach under 18 U.S.C. § 844(i). In *Russell v. United States*, 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985), the defendant was convicted of attempting to burn a two-unit apartment building he owned. In rejecting defendant's argument that the building was not a business or commercial property involved in interstate commerce, the Supreme Court concluded that the statute "unquestionably" applied to defendant's rental activity: "[w]e need not rely on the connection between the market for residential units and 'the interstate movement of people,' to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties." *Russell*, 471 U.S. at 862, 105 S.Ct. at 2457 (citation omitted). Instead, jurisdiction under § 844(i) attaches when the "property is 'used' in an 'activity' that affects commerce." *Id.*

Turner conceded that rental of real estate constitutes a sufficient link to interstate commerce but attempted to distinguish his case from the result in *Russell* by urging that the building was no longer "used" in an activity affecting interstate commerce because at the time of the arson it was vacant. Turner's argument that the cessation of rental activity is sufficient to sever the tie to interstate commerce has been considered and rejected by courts in several jurisdictions.

The First Circuit most recently considered this issue in *United States v. Medeiros*, 897 F.2d 13 (1st Cir.1990). Medeiros was charged with a conspiracy to commit arson on a fictitious commercial building. Although no building actually existed, the undercover agent working the case represented to Medeiros that the building had been rented in the past, but that the arson was not to occur until the building had become vacant. *Medeiros*, 897 F.2d at 15. The court decided that a "tenant's departure ... did not necessarily sever the property's ties to interstate commerce for purposes of § 844(i)." *Medeiros*, 897 F.2d at 16. Only a *de minimis* connection to interstate commerce was required under § 844(i) and if the building had been recently used in the rental market, the burden of proving the nexus to interstate commerce had been satisfied. *Id.*

The Seventh Circuit has rejected a claim essentially identical to the one in the present case. *United States v. Doby*, 872 F.2d 779 (7th Cir.1989). In that instance, the defendant was convicted of arson for burning a vacant two-unit house. At the time of the arson, the house was unoccupied and in need of repair, but at no time was the house removed from the rental market. Moreover, the owner had intended to repair the damage to the building but was unable to afford the cost of the renovations. *Doby*, 872 F.2d at

780. The district court's opinion, adopted by the Seventh Circuit, reasoned that "property routinely used in interstate-commerce does not lose its interstate use simply because of a temporary cessation of that activity." *United States v. Doby*, 684 F.Supp. 558, 561 (N.D.Ind.1988) (emphasis in original).

In *United States v. Patterson*, 792 F.2d 531 (5th Cir.), *cert. denied*, 479 U.S. 865, 107 S.Ct. 220, 93 L.Ed.2d 149 (1986), the Fifth Circuit considered whether partially completed apartment buildings fulfilled the "use" requirement of *Russell*. The court rejected defendant's argument that the buildings were not presently in "use" but were being built for future occupancy, and concluded that the " 'used in language seems to have been inserted only to make certain that the building or property *has some relationship* to an activity of commercial nature.' " *Patterson*, 792 F.2d at 533–34 (quoting *United States v. Andrini*, 685 F.2d 1094, 1095–96 (9th Cir. 1982)) (emphasis in original). The court concluded that rental apartments under construction had the necessary relationship to interstate commerce required by *Russell*. *Id. Patterson*, while not identical to the instant action, is instructive because the apartments were also considered to be involved in interstate commerce, although they were not currently in use.

Although this court has not to this date addressed the issue of extending *Russell* to vacant rental properties, it has recently considered the scope of *Russell* in a mine safety context. *United States v. Lake*, 985 F.2d 265, 269 (6th Cir.1993). The defendant in *Lake* operated a local coal mine and sold its coal to local customers. The court observed that "[j]ust as evidence of apartment rentals in *Russell* demonstrated a commercial connection, the government's proof of defendant's production and sale of coal permitted the jury to find that his mine affected the interstate market in coal." *Id. Cf. United States v. Voss*, 787 F.2d 393 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986) ("The commerce clause authorizes Congress to punish any criminal activity bearing even a de minimis relation to interstate commerce."); *United States v. Andrini*, 685 F.2d 1094 (9th Cir.1982) (activities affecting commerce under § 844(i) should be construed broadly).

■■■ This court is in accord with the interpretation of *Russell* adopted, without exception, by every circuit that has addressed the issue and concludes, as did the First and Seventh Circuits, that property routinely used in interstate commerce activity does not lose its interstate characteristics because of a temporary cessation of that activity. *Medeiros, supra; Doby, supra*. Testimony and evidence presented in this case proved that the residence in question had been a rental property from the date of its purchase to the date of its destruction by fire, and that the owner had intended to repair the property and place it on the rental market after Turner and his girlfriend had vacated the premises. These facts were sufficient to support a link to interstate commerce, notwithstanding the vacancy of the building at the time of the arson. Thus, Turner's first assignment of error contesting subject matter jurisdiction is without merit.

■■■ Turner next contended that the district court erred in denying his motion for acquittal under Rule 29. In reviewing denials of motion for acquittal, this court does not " 'weigh the evidence or … determine the credibility of the witnesses.' " *United States v. DeClue*, 899 F.2d 1465 (6th Cir.1990) (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). Rather, the burden of this court is to evaluate whether, viewed in a light most favorable to the government, there is sufficient evidence for any rational trier of fact to have found the essential elements of a crime beyond a reasonable doubt. *United States v. Nabors*, 901 F.2d 1351 (6th Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). This court " 'will reverse a judgment for insufficiency of evidence only if this judgment is not supported by substantial and competent evidence upon the record as a whole, and … this rule applies whether the evidence is direct or wholly circumstantial." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir.1992) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)) (ellipsis in original).

Turner specifically argued that the government did not develop any evidence connecting Turner to the fire or linking the property to interstate commerce. The latter assertion has already been discussed and found to be without merit. Simply, Phillip Hudson's testimony that the building had been a rental property since he had acquired its ownership and that he had intended to re-let it after it had been rehabilitated was sufficient for a rational trier of fact to identify the nexus between the building and interstate commerce.

■ Turner's assertion that the government failed to provide any evidence connecting him to the crime is equally without merit. His admission to Roger Arnett that he set fire to a yellow house on Broadway was sufficient evidence standing alone for the jury to find Turner guilty. In addition, there was substantial circumstantial evidence linking him to the crime, including his detailed statements to the two firemen explaining the manner in which the fire had been started. Upon reviewing the record, it is clear that sufficient evidence did exist to support Turner's conviction.

■ Turner's third assignment of error charged that the district court erred in failing to suppress the statements he had made to the two firemen. The district court refused to suppress those statements based on FED.R.EVID. 801(d)(2) which provides that an admission by a party-opponent is not hearsay but admissible evidence. In an attempt to avoid the purview of Rule 801(d)(2), Turner characterized his statements to the firemen as "exculpatory" rather than as admissions. There is no support in law for this position. On its face, Rule 801(d)(2) does not limit an admission to a statement against interest. Furthermore, this court has refused to place such a limited construction on the scope of an admission. In *United States v. Slone*, 833 F.2d 595, 601 (6th Cir.1987), this court concluded that a defendant's testimony to a grand jury was admissible under Rule 801(d)(2) despite the fact that the testimony denied rather than admitted the allegations that the prosecution were attempting to prove. In reaching that decision, the court observed that "[c]ourts have defined admis-

sion to include some specific fact which tends to establish guilt or some element of the offense." *Id.*

■ Turner's statements to Norman and Moore concerning the identity of the arsonist, the location where the fire started, and the type of matches used to set the fire are facts that bear upon guilt when taken in the context of the case because they provide evidence of defendant's knowledge of specific circumstances concerning the crime. The district court's admission of these statements under Rule 801(d)(2) was without error.

Turner also argued that the admission of these statements violated his Fifth Amendment right against self-incrimination since it forced him to testify and explain his conversations with the firemen. This argument is without substance. Turner was not compelled to testify nor was he forced to explain those statements. Rather, he could have refused to testify and permitted the jury to decide if the firemen's accounts of his previous statements were credible.

As his fourth assignment of error, Turner argued that the district court erred by allowing the prosecution to inquire about the details concerning his prior felony convictions which had been admitted for impeachment purposes. Turner did not challenge the admission of the prior felony convictions under Rule 609(a), but only the scope of the examination permitted by the court. Specifically, he claimed that the government's interrogation concerning the venue of his prior felonies and the disclosure that his last conviction resulted from his escape from a work release program were irrelevant and prejudicial.

■ In reviewing evidentiary rulings under Rule 609(a), broad discretion should be given to the trial court and its decisions should not be overturned absent an abuse of discretion. *United States v. Morrow*, 977 F.2d 222, 228 (6th Cir.1992) (en banc). Other courts that have addressed this issue have concluded that examination of the circumstances of prior felony convictions should be limited. In. *United States v. Roenigk*, 810 F.2d 809 (8th Cir.1987), for example, the Eighth Circuit concluded that questions con-

cerning the defendant's past associations with drug dealers were extremely prejudicial in a perjury trial. The court observed that "[t]he problem with excessive references to the details of prior criminal conduct is that the jury is likely to infer that the defendant is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life." *Roenigk,* 810 F.2d at 815. Similarly, in *United States v. Cox,* 536 F.2d 65 (5th Cir.1976), the Fifth Circuit decided that admission of "the explicit and execrable details" of prior prostitution charges was highly prejudicial in defendant's prosecution for a drug charge. *Cox,* 536 F.2d at 71.

■ Turner's case can be distinguished from the situations in both *Roenigk* and *Cox.* The situs of his prior felony convictions, while irrelevant, was not highly prejudicial. Likewise, the fact that one of his convictions resulted from an escape from a work release program was without prejudice. The jury would have been alerted to the existence of his escape from a work release program upon the admission of his prior conviction for escape. Thus, Turner's fourth assignment of error is also without merit.

Turner next charged that the district court erred in denying his motion for a new trial based on newly discovered evidence. Specifically, he argued that new evidence would prove that his former girlfriend, Mary Jo Downey, had threatened to burn the house on South Broadway and that she had on another occasion threatened to burn a different dwelling. This evidence was proffered in the form of affidavits from Deborah Wright who allegedly overheard Downey's threat to burn the South Broadway residence and Leroy McKinney who overheard Downey's other threat.

■ FED.R.CRIM.P. 33 provides that a court may grant defendant's motion for a new trial if it is necessary for the interests of justice. The decision to grant or deny such a motion rests within the discretion of the district court and should not be reversed absent a showing of abuse of discretion. *United States v. Seago,* 930 F.2d 482, 488 (6th Cir. 1991). The defendant bears the burden of proving the need for a new trial and such

motions should be granted sparingly and with caution. *Id.* The test for analyzing motions under Rule 33 was set out in *United States v. O'Dell,* 805 F.2d 637 (6th Cir.1986), *cert. denied,* 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987).

> The following elements must be established before a new trial will be granted: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal.

*O'Dell,* 805 F.2d at 640. In order to merit a new trial, defendant must satisfy his burden of proof by proving all four of the above factors.

■ An examination of the record discloses that Turner failed to meet his burden. First, the evidence allegedly discovered after the trial was not new evidence. The affidavits were given by Turner's friends. Deborah Wright was the brother of Tommy Wright who is defendant's brother-in-law. Assuming arguendo that the evidence was not known to Turner before trial, he certainly could have discovered the evidence earlier with due diligence. In addition, the statements concerning Downey failed the materiality prong of the *O'Dell* test. At best, the statements would be hearsay available for impeachment of Downey if she testified at trial. Finally, Turner cannot satisfy his burden of proving a likelihood of acquittal upon re-trial if the evidence were admitted. The new evidence disclosed only that Downey may have expressed an intention to burn the house; it was not, however, sufficient to prove that she did in fact commit the arson. Moreover, the evidence against Turner was substantial: his familiarity with the building and the details of the arson as well as the direct testimony of a witness linking Turner to the crime. The district court was well within its discretion in finding that Turner had failed to meet the requirements of the *O'Dell* test and therefore Turner's fifth assignment of error is also without merit.

The final assignment of error on appeal argues that the district court improperly cal-

culated the Sentencing Guideline Level under § 2K1.4(a). This section provides that the base offense level is 24, if the offense:

(A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling.

U.S.S.G. § 2K1.4(a)(1). The district court concluded that § 2K1.4(a)(1) applied and calculated Turner's sentence using the base offense level of 24. Turner contended instead that section § 2K1.4(a)(2) should have been applied. § 2K1.4(a)(2) provides that the base offense level is 20

if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense; (B) involved the destruction or attempted destruction of a structure other than a dwelling; or (C) endangered a dwelling, or a structure other than a dwelling.

Turner argued that he neither created a knowing risk of bodily injury nor attempted a destruction of a dwelling since the building that burned was unoccupied at the time and that accordingly the district court improperly found his base offense level to be 24.

Appellate review of sentences imposed under the Sentencing Guidelines is governed by 18 U.S.C. § 3742 (1992).

(e) Consideration.—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of the law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines;

(3) is outside the applicable guideline range, and is unreasonable . . .

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

At sentencing, the trial court concluded that Turner's actions could fit under either section (A) or (B) of § 2K1.4(a)(1). First, the fire was set early on a cold morning with extremely high winds. Thus, the district court concluded that because the people occupying the adjacent residence were likely to be asleep at that early morning hour coupled with the windy conditions that would cause the fire to spread quickly, Turner knowingly placed those residents at a risk of death or serious bodily injury. The court also decided that Turner should have known that he was placing firefighters at a substantial risk by committing the arson in weather conditions that would make extinguishing the fire extremely difficult. A comment to § 2K1.4 specifically includes firefighters in the group of people covered by section (A). U.S.S.G. § 2K1.4, comment. (n. 2). *See also, United States v. Grimes*, 967 F.2d 1468, 1471 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992) (finding that endangering firefighters is appropriate factor and noting that several other circuits have come to the same conclusion). As to Turner's argument that he did not attempt the destruction of a dwelling since the building he set afire was unoccupied, the district court observed that Turner should have known that by using an accelerant in extremely windy conditions the fire would spread quickly and reach the occupied dwelling next door.

Giving due deference to the district court's application of the guideline and reviewing its findings of fact under a clearly erroneous standard, Turner's final assignment of error must fail. For the foregoing reasons, defendant's conviction and sentence is **AFFIRMED.**