The PEOPLE of the State of Colorado, Complainant,

v.

Charles H. MEIER, Jr., Attorney–Respondent.

No. 97SA157.

Supreme Court of Colorado, En Banc.

March 9, 1998.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

George S. Meyer, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case was admitted to practice law in Colora-

do in 1993. A hearing panel of the supreme court grievance committee accepted the findings of a hearing board that the respondent had made inappropriate comments and asked improper questions of a prospective dissolution of marriage client. The hearing panel modified the board's recommendation of a private censure to a public censure, given the vulnerability of the victim and unimpressive nature of the factors in mitigation. We accept the hearing panel's recommendation and publicly censure the respondent.

## I.

Following a hearing, the hearing board made the following findings by clear and convincing evidence. In the fall of 1995, the complaining witness in this case, a young woman with a three-year-old child, was experiencing marriage difficulties and considering divorce. She called the respondent for legal advice. She spoke with him on the telephone four or five times regarding the possibility of filing for dissolution of marriage, reconciliation with her husband, and the financial aspects of dissolution.

On October 25, 1995, during one of these telephone conversations, the respondent asked her what she looked like, how tall she was, what her breast size was, and whether she was "desirable." He also asked her when the last time she and her husband had had sex. During the phone call, her son disturbed their conversation, and this prompted the respondent to advise her to keep her legs crossed so she would not have any more pesky kids.[1] Two days later, he called the woman at her home and asked, "Is this the good-looking ... ?", using her first name. She immediately hung up.

The respondent testified that his comments and questions to the woman were bungled and misguided, but arose from a concern for her well-being and an attempt to assess the possibilities of a reconciliation. The woman and her husband did reconcile. The respondent and the woman had not met in person when he made the above comments and he was never formally retained by her.

The hearing board determined that the "language [the respondent] used was inappropriate, harmful, offensive, harassing and sexually abusive to the" complaining witness. Thus, the respondent's "use of lewd and sexually offensive language during discussions preliminary to the formal retainer, falls below appropriate standards for members of the legal profession and violates the fiduciary relationship the respondent owed to" his prospective client. The respondent was found to have violated Colo. RPC 8.4(h) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

## II.

The hearing board recommended that the respondent receive a private censure. The hearing panel found it necessary to modify this to a public censure "given the similarity of the wrongfulness of the conduct in this proceeding to that in *People v. Bergner*, the client's vulnerability, and the insufficient weight that is to be derived from the mitigating factors found by the board."

The respondent excepted to the hearing panel's action and to some of the board's findings. In particular, the respondent claims that the board erred in finding that he violated Colo. RPC 8.4(h) by engaging in lewd conduct; that the recommended discipline is unduly harsh; and that the hearing board should not have admitted the respondent's response to the complaining witness's request for investigation (Exhibit 1) over the respondent's hearsay objection.

■ Looking at the evidentiary question first, the respondent claims that his response to the request for investigation was inadmissible because it was hearsay and did not fall within any of the exceptions to the rule against hearsay. In particular, the respondent complains that the hearing board "admitted the entire document as an admission

---

1. The respondent denied that he told her to keep her legs crossed to avoid having any more pesky kids. His version was that young girls in general could alleviate financial hardship problems by keeping their legs crossed. He also testified that this reference was in the context of discussing in the abstract the financial hardships caused by fathers abandoning their children and the growing social problem this posed for taxpayers. The hearing board found the woman's version of this part of the conversation to be more credible than the respondent's.

of a party-opponent despite the fact that, on its face, the document contains denials of some of the misconduct alleged by" the complaining witness. The hearing board did not refer to Exhibit 1 in its findings and recommendation, although the assistant disciplinary counsel in his closing argument pointed out that at least one part of the respondent's response was to some extent inconsistent with his testimony at trial.

Hearsay is defined as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Exhibit 1 was admitted under CRE 801(d)(2), which provides:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
>
> . . .
>
> (2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement in either his individual or a representative capacity. . . .

The respondent's response to the request for investigation was "his own statement" and it was offered by the complainant against the respondent, a party-opponent. It was therefore, not hearsay under CRE 801(d)(2). The fact that part of his response was inconsistent with his testimony at trial is not a consideration under CRE 801(d)(2).

■■■ In *United States v. Turner*, 995 F.2d 1357 (6th Cir.), *cert. denied*, 510 U.S. 904, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993), Turner was convicted of destroying a building by fire and causing personal injury. On appeal, Turner argued that the district court erred in admitting statements he made to two firemen about the fire. *Id.* at 1363. The statements were admitted as admissions of a party-opponent under Fed.R.Evid. 801(d)(2), which is the same as CRE 801(d)(2). Like the respondent in this case, Turner claimed that his statements were "exculpatory" rather than admissions. 995 F.2d at 1363. The Sixth Circuit rejected this contention. "There is no support in law for this position. On its face, Rule 801(d)(2) does not limit an admission to a statement against interest." 995 F.2d at 1363; *see United States v. DiDomenico*, 78 F.3d 294, 303 (7th Cir.1996) (to be admissible, "the statement of a party need not have been against interest when made"

or at any time); *State v. Bernier*, 157 Vt. 265, 597 A.2d 789, 791 (1991) (admissions of a party "include any statement made by and offered against a party opponent"); 2 Charles T. McCormick, *McCormick on Evidence* 254 (John William Strong ed., 4th ed.1992). The rationale for defining admissions by a party-opponent as non-hearsay is not that they are admissions against interest and therefore entitled to a presumption of reliability. Rather, such statements are not hearsay because under our adversary process a party has the opportunity to explain his own words which his adversary may use against him. *See Burlington N. R.R. v. Hood*, 802 P.2d 458, 466 (Colo.1990). Despite the fact that the respondent denied rather than admitted some of the charges against him in the response to request for investigation, that by itself does not take his responsive statement outside of CRE 801(d)(2). The hearing board did not err in overruling the respondent's hearsay objection.

■■ The respondent claims that "[t]he conclusion of law reached by the board in this case, that respondent violated R.P.C. 8.4(h) by the use of 'lewd' comments is unsupported by record evidence as respondent's comments were *crude and offensive* but unaccompanied by an inappropriate intent." (Emphasis added.) The hearing board wrote:

> 12. The hearing board concludes that [the complaining witness] did not either invite or consent to the respondent's use of lewd language. The board further concludes that the language he used was *inappropriate, harmful, offensive, harassing and sexually abusive to the complainant.*
>
> . . . .
>
> 14. The hearing board concludes that the use of lewd and sexually offensive language by the respondent during discussions preliminary to the formal retainer, falls below appropriate standards for members of the legal profession and violates the fiduciary relationship the respondent owed to [the complaining witness]. Although he had no formal agreement with [her], the respondent had taken up a position of authority and trust in relation to her and he had begun rendering advice.

The numerous phone conversations detailed in Exhibits 1 and 2 evidence that he engaged in an extended pattern of counseling [the complaining witness] before the violation. The board concludes the respondent's ultimate intention and the lack of existence of a formal attorney-client relationship are of no consequence. The use of this language violated his professional responsibility to [the complaining witness] and to the public.

Colo. RPC 8.4 provides, "It is professional misconduct for a lawyer to: ... (h) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law." In *People v. Morley*, 725 P.2d 510, 516 (Colo. 1986), we upheld the predecessor to Colo. RPC 8.4(h), DR 1–102(A)(6), against the claim that it was unconstitutionally vague in violation of due process of law:

> When C.R.C.P. 241.6(3) and DR 1–102(A)(6) are measured by the "licensed lawyer" standard, we are convinced that these disciplinary proscriptions are adequate to inform the respondent and other licensed lawyers of the nature of the prohibited conduct and that they provide sufficiently clear norms of conduct for the objective administration of the disciplinary process. Counseling another in illegal conduct is itself prohibited by law. It requires little imagination to conclude that any practicing attorney would know that counseling illegal activity is a violation of the highest standards of morality and reflects adversely on that lawyer's fitness to practice law. In short, we conclude that C.R.C.P. 241.6(3) and DR 1–102(A)(6) are not unconstitutionally vague on their face or as applied to the respondent under the circumstances of this case.

725 P.2d at 516 (citations omitted). Similarly, "any practicing attorney would know" that asking a prospective and obviously vulnerable divorce client about the size of her breasts would "adversely reflect[ ] on the lawyer's fitness to practice law." The respondent points out that his comments to the complaining witness might not come within the literal dictionary meaning of "lewd." Those comments were nevertheless "inappropriate, harmful, offensive, harassing and sexually abusive" to the complaining witness, and the hearing board properly concluded

that the respondent's conduct violated Colo. RPC 8.4(h).

■ The respondent's third contention is that public discipline is unduly harsh under the facts of this case and the mitigation found to be present. According to the respondent, the appropriate sanction is a letter of admonition or, at most, a private censure.

■ He points to summaries of private discipline involving what he thinks is analogous misconduct. The summaries are necessarily brief synopses of private, unpublished discipline, that intrinsically cannot fully reflect the facts of the particular case. Moreover, the private censures themselves, being unpublished, do not constitute the binding precedent that a published opinion of this court would.

In *People v. Bergner*, 873 P.2d 726, 727 (Colo.1994), we publicly censured a lawyer for participating in a conversation with his client which was sexual in nature and which made the client uncomfortable. When Bergner

> engaged in his offensive, inappropriate, and highly unprofessional conduct, the client was in the respondent's vehicle traveling to the client's dissolution of marriage hearing. The client was dependent on the respondent's professional judgment. and ability, and had the right to expect that the respondent's conduct would conform to professional and fiduciary standards.

*Id.* We found private discipline too lenient in *Bergner* primarily because "[w]hatever the respondent's ultimate intentions might or might not have been, his continuous course of lewd and vulgar comments cannot be characterized as simply negligent behavior." *Id.* at 728. The same is true of the course of the respondent's conduct in this case. We also stated in *Bergner* that some members of the court found a public censure too lenient. *Id.*

The mitigating factors found by the hearing board do not compel a different result. The board determined that the respondent has only practiced law a short period of time, *see* ABA *Standards for Imposing Lawyer Sanctions* 9.32(f) (1991 & Supp.1992) (inexperience in the practice of law is a mitigating factor); he apologized to the complaining witness upon receipt of her request for inves-

tigation, *see id.* at 9.32(d) (timely good faith effort to rectify consequences of misconduct); and he was forthright and cooperative during the hearing, *see id.* at 9.32(e). And, the respondent has not previously been disciplined. *See id.* at 9.32(a).

Although the respondent demonstrated remorse, "the hearing board [was] not convinced the respondent has demonstrated an understanding of the gravity of his misconduct." In addition, the respondent's "questions and comments created an oppressive environment for [the complaining witness] at a time of vulnerability." *See id.* at 9.22(h) (vulnerability of the victim is an aggravating factor). Taking all of the above into account, we have decided to accept the hearing panel's recommendation of a public censure.

### III.

Charles H. Meier, Jr., is hereby publicly censured. It is ordered that Meier pay the costs of this proceeding in the amount of $234.29 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202–5135, within thirty days after the announcement of this opinion.