**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brian L. JOHNSON, a/k/a Brian Holland,**
**Defendant–Appellant.**

**No. 97–5323.**

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1998.

Decided Aug. 17, 1998.

Frederick H. Godwin (argued and briefed), Asst., U.S. Attorney, Memphis, Tennessee, for Plaintiff–Appellee.

Michael J. Stengel (argued and briefed), Memphis, Tennessee, for Defendant–Appellant.

Before: KRUPANSKY, NORRIS, and COLE, Circuit Judges.

NORRIS, J., delivered the opinion of the court, in which KRUPANSKY, J., joined. COLE, J. (pp. 558–59), delivered a separate opinion concurring in part and dissenting in part.

ALAN E. NORRIS, Circuit Judge.

Defendant Brian L. Johnson appeals from the sentence imposed by the district court after he pleaded guilty to one count of damaging religious property in violation of 18 U.S.C. § 247(c).

## I.

According to a four-count superseding indictment, defendant set fire to a church in Dyersburg, Tennessee, on July 22, 1996. The church served a predominantly white congregation; defendant is black. The indictment charged him with two counts of arson, 18 U.S.C. § 844(i), one count of intentionally damaging religious property, 18 U.S.C. § 247(a)(1), and one count of intentionally damaging religious property "because of the race and color of individuals associated with that religious property." *See* 18 U.S.C. § 247(c).[1]   Defendant pleaded

---

1. This section provides:
   Whoever intentionally defaces, damages, or destroys any religious real property because of the race, color, or ethnic characteristics of any individual associated with that religious prop-

guilty to the last offense in exchange for dismissal of the remaining counts.

On the day of the offense, defendant stole an automobile and, as related by the presentence report:

> He drove the vehicle behind the church and positioned it so that the driver's side door was up against the church. He set the vehicle on fire by using his cigarette lighter to ignite papers and motor oil which were in the back seat of the stolen vehicle. The defendant had spread the "motor oil" throughout the interior of the vehicle to enhance the fire. By setting fire to the vehicle parked behind the church, the defendant intentionally caused the fire to spread to the church.

Defendant was apprehended fleeing the scene. He quickly gave a confession, which included his belief that "Satan had led him to the particular vehicle with the keys in it, and that he was doing the will of Satan by burning the church which would cause racial tension between blacks and whites."

The district court sentenced defendant to sixty months of imprisonment, three years of supervised release, and a fine of $25,000.[2]

## II.

The focus of this appeal involves the district court's decision to sentence defendant pursuant to U.S.S.G. § 2K1.4(a)(1) rather than § 2K1.4(a)(2). The guideline provides:

> (a) Base Offense Level (Apply the Greatest):
>
> (1) **24**, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling;
>
> (2) **20**, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense;

(B) involved the destruction or attempted destruction of a structure other than a dwelling; or (C) endangered a dwelling, or a structure other than a dwelling;

> . . . .

U.S.S.G. § 2K1.4 (1995). After hearing testimony from an expert in emergency medicine, the chief of the fire department that responded to the blaze, and an ATF agent who is an expert in determining the cause and effect of fires, the district court concluded that defendant merited the higher base offense level because he knowingly created a substantial risk of injury to fire department personnel and to the nearby parsonage.

This court has recently explained that a proper determination of which subsection of U.S.S.G. § 2K1.4(a) applies involves two steps:

> First, we must determine whether defendant's actions created a substantial risk of death or serious bodily injury. Courts of appeal considering this issue have declined to develop any clear litmus test for resolving this point; instead, they have generally adopted a case-by-case approach which requires assessment of all relevant factors. . . .
>
> . . . .
>
> The second step of our analysis requires us to determine whether the defendant "knowingly" created a substantial risk of death or serious bodily injury. The answer to this inquiry is not always as clear cut as one might hope. On one hand, a defendant would certainly act with the requisite knowledge if he set a fire during the night in an apartment building that he knew to be inhabited. On the other hand, we would be hardpressed to find that an individual knowingly created a substantial risk when he torched his neighbor's garage, believing it to be empty, when it in fact contained explosives. . . .

---

erty, or attempts to do so, shall be punished as provided in subsection (d).
18 U.S.C. § 247(c).

**2.** Although listed as a fine in the judgment entry, the district court characterized the $25,000 as restitution at the sentencing hearing.

Because the guidelines do not define "knowingly," several courts of appeal have looked to the Model Penal Code for help in defining that term.... The Model Penal Code defines "knowingly" as follows:

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.022(2)(b). The Model Penal Code's definition of the culpable mental state of knowledge as "practically certain" that conduct will cause a certain result tends to track the accepted understanding of the term as it is used in the context of criminal law.

*United States v. Johnson*, 116 F.3d 163, 165–66 (6th Cir.1997) (citations and footnote omitted); *see also United States v. Latouf*, 132 F.3d 320, 332 (6th Cir.1997) (while defendant may not have specifically attempted to put someone at risk, he should have expected that fire fighters would face danger), *cert. denied*, —— U.S. ——, 118 S.Ct. 1572, 140 L.Ed.2d 805 (1998); *United States v. Turner*, 995 F.2d 1357, 1365 (6th Cir.1993) (defendant should have known that weather conditions would put fire fighters at a substantial risk).

In this case, the district court heard testimony about the nature of the fire. It then opted for the higher base offense level for the following reasons:

[Defendant] stated to witnesses that he had stashed the car and soon fire trucks would be coming, indicating that he knew that if a fire was set to the church that emergency personnel would respond, and in responding they would have to fight the fire and would obviously be subjected to a risk. And the government argues that this is a risk that was created knowingly.

In this case the—while the winds were not excessively high, it was a very warm day. There was a mild wind as testified by, I believe, the witnesses. There were other structures that were located reasonably close to the church that there was some risk created.

The pastor, I believe of the church, the parsonage rather, I believe, was located reasonably close to the church. And the fire—I believe the chief of the fire department stated that had the fire not been contained it was reasonable that the fire could have spread to the parsonage, and that the pastor was, I believe, at home on that particular day.

The court finds that while the—this case can be distinguished from *Turner*, the court finds that the same knowing risk was created such that the higher base level offense is appropriate in this case.

The defendant is not charged with having known that the pastor was home or having known that by having to wear heavy garb that it would put the firefighters at increased risk but this defendant, even though there is some question of his capacity, certainly was aware that the setting of a fire created a substantial risk of harm to, if no one else, the firefighters involved....

■ While it is true that the Sentencing Guidelines explicitly provide that creation of a substantial risk includes a risk to fire fighters, U.S.S.G. § 2K1.4, appl. n. 2, that risk must include something more than simply responding to the fire. If it did not, then virtually every fire would merit application of the higher base offense level of section 2K1.4(a)(1). In this respect, we agree with the view expressed by the Court of Appeals for the Eleventh Circuit in *United States v. Honeycutt*, 8 F.3d 785 (11th Cir.1993):

[T]he knowledge that fire fighters will respond to a fire cannot suffice to satisfy § 2K1.4(a)(1). If that knowledge alone were sufficient, § 2K1.4(a)(2) (creation of a substantial risk of death or serious bodily injury) would be subsumed by § 2K1.4(a)(1) (knowing creation of that risk), as fires are inherently dangerous,

and the knowledge that fire fighters and emergency personnel respond to virtually all fires can ordinarily be presumed.... The arsonist must know that a specific fire for some reason poses a substantial risk of death or serious bodily injury to fire fighters and emergency personnel who may respond.

*Id.* at 787–88. In the case before us, the kind of special dangers necessary to a finding that defendant knowingly created a substantial risk to firefighters do not exist. The wind velocity was minimal; the accelerant was used in the interior of the car only, not in the church; the church was of brick construction; and, although the day was hot, the fire fighters took measures to counteract the heat. Standing alone, the risk to fire fighters is insufficient to support the district court's decision to apply the higher base offense level.

■ That conclusion does not end our inquiry, however. The district court also relied upon the proximity of the parsonage, which stood only fifty feet from the church and was occupied. The likelihood that a fire might spread to a nearby dwelling is the kind of clearly foreseeable circumstance that supports a conclusion that a defendant knowingly created a risk of death or serious bodily injury to another as contemplated by § 2K1.4(a)(1)(A). Since the district court's finding in that regard is not clearly erroneous, we affirm the use of § 2K1.4(a)(1) in determining the base offense level.

■ The second sentencing issue raised by defendant concerns the district court's decision to impose an upward departure pursuant to U.S.S.G. § 5K2.6:

*Weapons and Dangerous Instrumentalities* (**Policy Statement**)

If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

The district court departed upward to increase defendant's offense level by one point. We review the decision to depart for abuse of discretion. *United States v. Dobish,* 102 F.3d 760, 763 (6th Cir.1996).

■ The district court gave these reasons for departure:

In this case the court finds that there is a basis to at least depart somewhat in this case and the court relies on the following factors. In this case the defendant knowingly placed the—the automobile at the entry of the church where the—which was the most likely entry for the firefighters to use to gain access based on the structure of this church....

The heating and cooling unit ... was immediately above the entry which the firefighters had to use because the—because of the entry being blocked by the automobile ... it put the firefighters having to go in that entry under that particular structure at an increased risk.

And the court finds that those factors are sufficient to cause the court to take this particular case, that coupled with the motive, out of the—out of the heartlying and heartland, rather, of cases and provide an upward departure.

We conclude that these reasons are insufficient to justify an upward departure. First, the church had a number of entrances. While one did have an air conditioner above it, others did not. Second, the church was constructed of brick. Third, the accelerant was used minimally and ineffectively. In short, the circumstances of the fire strike us as well within the heartland of cases. The district court also relied upon motive. While defendant's motive was undeniably reprehensible, it was accounted for by the three-level increase that he received pursuant to U.S.S.G. § 3A1.1(a). Furthermore, the district court did not explain why this increase was inadequate. We therefore reverse the upward departure imposed by the district court.

### III.

For the foregoing reasons, the sentence of defendant is **vacated** and this matter is re-

manded to the district court for further proceedings consistent with this opinion.

COLE, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that the district court abused its discretion in departing upward to increase Johnson's sentence pursuant to U.S.S.G. § 5K2.6. I write separately to express my disagreement with the majority's view that the district court's reliance on the proximity of the parsonage to the church in this case warrants affirmance of the applicability of U.S.S.G. § 2K1.4(a)(1) rather than § 2K1.4(a)(2) to Johnson's offense. In my view, the district court's application of the former was clearly erroneous. I would therefore vacate the sentence for a redetermination of Johnson's base offense level.

The majority correctly concludes that Johnson's knowledge of the risk of harm to firefighters is insufficient to warrant the application of § 2K1.4(a)(1) to this case because the provision's requirement that a defendant knowingly created a substantial risk of harm to persons requires more than the knowledge that firefighters will respond to the fire. The majority reasons, however, that the district court's finding that the parsonage was "reasonably close" to the church and the pastor was in his home at the time of the fire is sufficient to warrant the use of § 2K1.4(a)(1)(A) to calculate Johnson's base offense level.

An affirmance of the application of § 2K1.4(a)(1)(A), requires evidence that Johnson was "aware that it [was] practically certain" that his setting fire to the car engendered a substantial risk of harm to an occupant of the parsonage. *See supra* majority opinion's discussion of Model Penal Code § 2.022(2)(b) p. 556. The district court found no awareness on Johnson's part of the practical certainty of such a result. In fact, the district court found only that Johnson was certainly aware of the risk of harm to firefighters: "this defendant ... certainly was aware that the setting of a fire created a substantial risk of harm to, *if no one else*, the firefighters involved ...." (emphasis added). Nothing in the record supports a finding that when Johnson set the car on fire he knew that the pastor was at home, and the district court acknowledged as much: "[Johnson] is not charged with having known that the pastor was home...."

Perhaps most importantly, the circumstances of Johnson's offense created no practical certainty that a person in the parsonage would be harmed. The parsonage was at least fifty feet away from the church, separated by a grassy lot. Meanwhile, photos of the crime scene depict the ignited car as being so close to the church that a church door could not be fully opened without hitting the car. The only reference to the likelihood of harm to the parsonage, and by implication an occupant of the parsonage, is a fire chief's testimony that "had the fire not been contained it was *reasonable* that the fire *could* have spread to the parsonage." This is hardly a finding that Johnson's offense created a "practical certainty" of harm to a person in the parsonage. *Cf. United States v. Ruiz,* 105 F.3d 1492, 1506–07 (1st Cir.1997) (stating that sentencing under "stringent 'practically certain' test" requires more than recklessness or negligence even where the defendant set fire to a store in the basement of an occupied residential duplex). Thus, in my view, Johnson did not possess the requisite mental culpability to justify application of § 2K1.4(a)(1)(A).[1]

Johnson set fire to a car in an attempt to burn a church. Section 2K1.4(a)(2) is the guideline which directly applies to this crime.[2] The majority correctly rejected the district court's reasoning that Johnson's knowledge that firefighters would come to the burning church sufficed to place his offense within the ambit of § 2K1.4(a)(1).

---

**1.** Incidentally, the district court recognized that there was "some question" as to Johnson's "capacity." The defendant has a well-documented history of mental illness and psychiatric treatment which may have impaired his judgment. In my opinion, this fact weighs against the application of § 2K1.4(a)(1)(A) as well.

**2.** The presentence investigation report recommended that the district court use § 2K1.4(a)(2) to compute Johnson's base offense level.

However, the majority relies on even weaker grounds for affirming the application of this provision. I see no reason to resort to a tortured interpretation of § 2K1.4(a)(1) when Johnson's crime fits neatly within a common-sense reading of § 2K1.4(a)(2). Because I believe that there is no evidence in the record to support the district court's conclusion, and the district court's construction of the evidence is unreasonable, I would vacate the district court's sentence and remand for re-determination of Johnson's base offense level. *See Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir.1985) (stating that when reviewing for clear error, reversal is warranted when the reviewing court is left with the definite and firm conviction that a mistake has been committed).