Charles H. MEIER, Jr., Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 04PDJ109.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

May 27, 2005.

**OPINION AND ORDER RE: RE-
INSTATEMENT PURSUANT
TO C.R.C.P. 251.29**

This case comes before the Court pursuant
to Petitioner Charles H. Meier's Verified Pe-
tition for Reinstatement, filed on November
24, 2004. Petitioner requests reinstatement

to the practice of law under C.R.C.P. 251.29(c), after a one-year-and-one-day suspension for conviction of third degree sexual assault. In an Answer filed on December 16, 2004, the People acknowledged that Petitioner is eligible for reinstatement, but initially took no position on the merits of the Petition.

On March 30, 2005, a Hearing Board consisting of William R. Lucero, the Presiding Disciplinary Judge ("PDJ"), Ralph G. Torres and Paul Willumstad, both members of the bar, conducted a Reinstatement Hearing pursuant to C.R.C.P. 251.29(d) and 251.18. Michael D. Gross represented Petitioner, who was present. James S. Sudler represented the People. At the hearing, the Parties stipulated that Petitioner has complied with all terms and conditions of his suspension. Petitioner offered and the PDJ admitted by stipulation Petitioner's Exhibits 1–9. Petitioner also testified on his own behalf. The People did not present any evidence, either documentary or testimonial. At the conclusion of the evidence, however, the People argued against reinstatement.

With the consent of all Hearing Board members, the PDJ issued a Post–Reinstatement Hearing Order on April 1, 2005. This Order asked the Parties to consider a stipulation regarding reinstatement, and suggested that the Hearing Board might reopen the hearing for the presentation of additional evidence. In separate position statements filed on April 7 and April 11, 2005, the Parties declined to enter into a stipulation. The Hearing Board then declined to reopen the hearing. Accordingly, the Hearing Board issues the following Opinion and Order.

### ORDER: ATTORNEY REINSTATEMENT DENIED

### I. ISSUE

Reinstatement of a law license after suspension for more than one year requires that the attorney prove "rehabilitation" by clear and convincing evidence. There is not one specific definition or test for rehabilitation. Rather, it has been characterized as an overwhelming change, evidenced by a multitude of factors and requiring positive action beyond doing what is proper. The issue presented is whether the attorney's own testimony regarding a change in outlook sufficient to show rehabilitation.

The Hearing Board finds that, however sincere, Respondent's own testimony alone was insufficient to demonstrate rehabilitation. There must be some independent corroborating and/or illustrative evidence from which the Hearing Board can conclude that the change is real and that the attorney merits reinstatement.

### II. FINDINGS OF FACT

The Hearing Board finds the following facts by clear and convincing evidence. Petitioner has taken and subscribed the Oath of Admission, was admitted to the Bar of this Court on November 9, 1993, and is registered as an attorney upon the official records of this Court, registration number 23544. His license to practice law is currently suspended. Petitioner is subject to the jurisdiction of this Court and the Office of the Presiding Disciplinary Judge in these proceedings.

Petitioner is a 70–year–old sole practitioner who resides in Colorado Springs. He graduated from the United States Air Force Academy in 1959, and began a career in the armed forces (personnel and flying). He studied chemistry in graduate school, and taught at the Academy from 1971 until 1986. Petitioner retired from the military as a colonel and the deputy head of the chemistry department. Upon retirement, Petitioner became depressed by the lack of structure in his life. Therefore, he returned to work as a systems engineer with a computer sciences company and then served as an El Paso County Commissioner for four years. During his time in public office, Petitioner observed people with problems who could not afford legal assistance. Thereafter, he enrolled in law school at the University of Denver and graduated in 1992 with the intent to help provide legal assistance to those who could not afford it. Upon admission to the Colorado bar in 1993, Petitioner began practicing real estate law, but subsequently switched to criminal law, then juvenile law, and finally family law (specifically divorce).

Petitioner has one prior disciplinary matter. In *People v. Meier,* 954 P.2d 1068 (Colo.

...

1998), the Colorado Supreme Court publicly censured Petitioner for making inappropriate comments to a prospective divorce client over the telephone. A hearing panel found that Petitioner had asked the woman questions about whether she was desirable, her breast size, and the last time she had sex with her husband. The panel also found that Petitioner had advised the woman to "keep her legs crossed so she would not have any more pesky kids." It was then determined that Petitioner's "lewd and sexually offensive language" was "inappropriate, harmful, offensive, harassing and sexually abusive." By way of explanation of this incident, Petitioner testified at the reinstatement hearing that he was attempting to figure out why the woman's husband was being unfaithful. He also offered that he was discussing women keeping their legs crossed "in general," and not referring to any particular woman. He says that he does not specifically recall asking the woman about her breast size.

Petitioner was suspended from the practice of law for one year and one day, effective October 1, 2000, in case number 00PDJ043. The sanction was imposed by the PDJ upon acceptance of the Parties' Stipulation, Agreement, and Affidavit Containing Respondent's Conditional Admission of Misconduct ("Stipulation"). The case arose out of an incident with a prospective client, and a resulting criminal conviction.

The facts underlying this conviction are as follows. On December 14, 1998, Petitioner went to the home of Shanyn Stanley, a prospective client, for the purpose of discussing her divorce case. Based upon Ms. Stanley's report to the police concerning the events that evening, the El Paso County District Attorney filed charges against Petitioner under C.R.S. § 18–3–404 for third degree sexual assault. Petitioner maintained his innocence. At the criminal trial, Ms. Stanley testified that Petitioner made lewd remarks and gestures toward her, indicating that he wanted sexual intercourse with her. Ms. Stanley also testified that, at the end of their meeting, Petitioner embraced her, rubbed her bottom, and grabbed her breast. Petitioner did not testify. A jury convicted him

of third degree sexual assault in November 1999. The conviction was upheld on appeal.

In the Stipulation, Petitioner admitted that his conviction violated Colo. RPC 8.4(b) (criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects) and C.R.C.P. 251.5(b) (grounds for discipline include any act which violates the criminal laws of this state). The PDJ accepted the Stipulation and imposed the agreed-upon sanction, which included the following conditions: successful completion of the Office of Attorney Regulation Counsel's ethics school, successful completion of a Colorado Lawyer's Health Program sexual misconduct program, and payment of costs. Petitioner has complied with these conditions.

In the criminal case, Petitioner was sentenced to probation with sex offender rehabilitation. Petitioner completed a state-approved Sex Offender Treatment Program conducted by Dr. Leveille & Associates, participating in 36 months of offense-specific treatment. Treatment included individual and group therapy sessions, journals, homework, and polygraphs. In a "letter of completion" dated May 21, 2004, Dr. Leveille stated that Petitioner has "the necessary insights, understanding and knowledge to assist him in avoiding re-offending," but success in the program does not guarantee against the commission of another sexual crime.

Petitioner was initially resistant to treatment, particularly because he believed that he did not need it. He continues to express doubts about his innocence or guilt in the matter involving Ms. Stanley. Petitioner pled not guilty, and claims that it would have been physically impossible to touch Ms. Stanely's bottom while hugging because he was recovering from open-heart surgery at the time. He insists that, because he was impotent from the surgery, there was no contemplation of intercourse. However, he admits that sex was implied during prior telephone conversations, as he had made comments about dancing with a man, being "tight," and wearing clothing that is easy to take off. He also admits to "sexual talk" while at Ms. Stanley's house, and admits to "touring" her bedroom. He says that he

hugged her out of compassion. Petitioner states that he does not remember the events of that night clearly, or specifics regarding what he said. He questions his memory, and submitted to neurological and psychological testing in an unsuccessful effort to uncover a biological explanation. Petitioner did apologize to Ms. Stanley.

Petitioner resented many of the conditions of his probation, especially the limits on contact with his grandchildren. Eventually, however, Petitioner accepted the situation and accepted the benefits that treatment could offer. He whole-heartedly committed himself to his therapy. Petitioner testified that he and his family worked hard to confront and resolve his issues. He described "several major character defects" that had developed over his lifetime as a result of faulty core beliefs. Petitioner found that, because of his strict upbringing, his military career, and his time in political office, he had a sense of entitlement and serious problems surrounding issues of power and control. Petitioner also identified his objectification of women, and his attitude that women existed simply to serve men. He realized that real intimacy is not sexual, but involves openness, honesty, and sharing feelings without feeling threatened.

Over the course of his treatment, Petitioner was required to face painful events of his past, including the drowning death of his two young sons and his marital indiscretions. His experience with sexual history polygraphs required him to deeply explore his entire sexual history. Petitioner was also required to take certain steps, such as giving his wife joint ownership in their property and holding hands with her in a public park (he stated that this was one of the most difficult tasks for him). Petitioner now openly acknowledges that his character defects caused him to violate boundaries, which were previously unclear to him. He testified that he has gained important insight into personal and professional boundaries. He testified that he has gained the wisdom not to put himself in boundary-crossing situations. Petitioner's probation terminated after three years.

Petitioner testified that he became a recluse following his suspension, due to the embarrassment and humiliation of the conviction. He did complete 80 CLE credits through home study, but he has not otherwise been involved in the law. His last CLE credit was obtained on April 30, 2004. Petitioner states that he has kept busy with his family, his dogs, beekeeping, and timeshare traveling. He has also been active on a homeowner's association board in Vail. Petitioner presented no other evidence of community service or activities. During his suspension, a civil judgment entered against Petitioner in an unrelated matter (prior to his conviction, Petitioner's horse spooked and trampled his grandson). His insurance company satisfied the judgment.

According to Petitioner, it is unlikely that he will resume practicing law. Nevertheless, Petitioner would like to have the ability to help friends, his condominium association, and perhaps other sex offenders. He also wants his license reinstated because he worked hard to get it, and values the resulting shift from "black and white" military thinking. He does not currently have a mentor, but is open to mentoring and gave the Hearing Board his assurance that he will find a mentor. He does not currently have an office, and says that an office (or even an office-sharing arrangement) is not financially feasible given that his practice will be quite limited and he desires to keep fees low. Petitioner stated that he will no longer provide services in clients' homes, and will have his wife present at all client meetings.

Petitioner has been eligible for reinstatement since October 2, 2002, but waited until he had completed probation before applying. He has complied with the technical requirements for reinstatement, including filing an affidavit pursuant to C.R.C.P. 251.28(d). Petitioner argues that he has been rehabilitated and is unlikely to reoffend. Petitioner points out that he was scared enough by the criminal justice system and the loss of time with his grandchildren to avoid repeating the situation. Petitioner also points out that he has made a significant personality change, partic-

ularly at his age and with his background.[1] Petitioner does not see himself as a danger to anyone. The People argue against reinstatement, stating that Petitioner has failed to meet his burden for reinstatement by clear and convincing evidence. The People point to the fact that the Hearing Board heard only from Petitioner himself, with no third parties testifying on his behalf. The People point to the fact that Petitioner had only eight years of practice previously, and has now gone 4.5 years with no involvement in the profession with the exception of CLE credits. The People also emphasize Petitioner's lack of effort to become involved in his community.

### III. *CONCLUSIONS OF LAW*

When an attorney has been suspended for longer than one year, the reinstatement process begins with the submission of a verified petition for reinstatement under C.R.C.P. 251.29(c). The petition must set forth, in part:

> (3) The facts other than passage of time and absence of additional misconduct upon which the petitioning attorney relies to establish that the attorney possesses all of the qualifications required of applicants for admission to the Bar of Colorado, fully considering the previous disciplinary action taken against the attorney;
>
> (4) Evidence of compliance with all applicable disciplinary orders and with all provisions of this Chapter regarding actions required of suspended lawyers;
>
> (5) Evidence of efforts to maintain professional competence through continuing legal education or otherwise during the period of suspension.

C.R.C.P. 251.29(c). A hearing board makes the reinstatement decision. C.R.C.P. 251.29(e). An attorney may be reinstated to the practice of law upon demonstration, by clear and convincing evidence, that the attorney 1) has been rehabilitated, 2) has complied with all applicable disciplinary orders and all rules regarding reinstatement, and 3)

is fit to practice law. C.R.C.P. 251.29(b) and (d). All three elements must be shown before the hearing board may authorize reinstatement. The hearing board may also consider the attorney's past disciplinary record. C.R.C.P. 251.29(e). If an attorney is unable to satisfy the burden of proof and the petition for reinstatement is denied, the attorney may not reapply for a period of two years. C.R.C.P. 251.29(g).

The concept of rehabilitation has been described in many different ways. It has been characterized as "the reestablishment of the reputation of a person by his or her restoration to a useful and constructive place in society." *In re Cason*, 249 Ga. 806, 294 S.E.2d 520, 522 (1982). It has also been defined as "regeneration," denoting an overwhelming change in the applicant's state of mind. *In re Cantrell*, 785 P.2d 312, 314 (Okla.1989). The analysis of rehabilitation should be directed at the professional or moral shortcoming(s) out of which the discipline arose. *Tardiff v. State Bar*, 27 Cal.3d 395, 165 Cal.Rptr. 829, 612 P.2d 919, 923 (1980). It is not enough to show that the attorney is doing what is proper; rather, there is a requirement of positive action. *See In re Sharpe*, 499 P.2d 406, 409 (Okla. 1972). In *People v. Klein*, 756 P.2d 1013, 1016 (Colo.1988), the Colorado Supreme Court declared that the rehabilitation assessment "must include the consideration of numerous factors bearing on the [attorney's] state of mind and ability." [2] These factors include but are not limited to:

1. character;
2. conduct since the imposition of discipline;
3. professional competence;
4. candor and sincerity;
5. recommendations of other witnesses;
6. present business pursuits;
7. personal and community service; and
8. recognition of the seriousness of previous misconduct.

---

**1.** Petitioner claims that it is possible to "teach an old dog new tricks."

**2.** While this case interpreted the previous rule, C.R.C.P. 241.22, it looks to the ABA factors for determining rehabilitation and provides valuable guidance in this area.

Much of the legal argument in this case centered on whether Petitioner can show rehabilitation without actually admitting that he committed the crime for which he was convicted. In this respect, the Hearing Board notes that recognition of previous misconduct is only one aspect of the analysis, and failure in this area does not necessarily preclude rehabilitation. *See e.g. Barnthouse v. People,* 99PDJ022 (slip opinion, Opinion and Order Reinstating William J. Barnthouse's License to Practice Law dated June 30, 1999). Additionally, while Petitioner has not admitted to third degree sexual assault, he has acknowledged that his behavior toward Ms. Stanley was inappropriate. He also accepted the consequences when found guilty.

Nonetheless, Petitioner's proof of rehabilitation falls short of clear and convincing evidence. He has demonstrated compliance with the terms of probation in his criminal case and compliance with the terms of this Court's order imposing discipline. But simply doing what is required and proper is insufficient. The only other evidence presented by Petitioner supporting rehabilitation was his own testimony concerning a change in outlook. However, mere personal reflection and personal assurances, even if sincere, are also insufficient. There must be some corroborating and/or illustrative evidence from which it can be concluded that the change is real. Such evidence is particularly important in this case, as Petitioner's prior misconduct bears many similarities to the conduct for which he is currently suspended.

Petitioner's corroborative evidence falls short. Exhibits 3, 4, and 6–9 contain the only objective, third-party evidence presented. These documents simply show that Petitioner has met specific requirements; they do not show the kind of transformation necessary for a finding of rehabilitation. Petitioner did not present the testimony of treating medical professionals or counselors, his family, or members of the community in support of his reinstatement. It is certainly understandable that Petitioner did not want his wife to have to re-live painful events by attending the hearing and testifying on Petitioner's behalf. However, such considerations do not alter the burden of proof.

Petitioner's illustrative evidence also falls short. While it is laudable that Petitioner is now able to hold hands with his wife in public, this example does not give the Hearing Board reassurance regarding how he will interact with female clients in the practice of law. This issue is of particular concern to the Hearing Board because Petitioner does not plan to have an office or work with other attorneys. Petitioner also admitted that he has not been actively involved in his community. Activities during the suspension have been personal in nature or family-oriented. His one outside endeavor has been participation in a private homeowners association not located in his community of residence. Petitioner would have benefited from participation in local civic, cultural, religious, or community service organizations.

The above considerations prevent the Hearing Board from concluding that Petitioner has met his burden of proof. The Hearing Board nevertheless commends Petitioner for his progress and encourages continued growth.

## IV. *ORDER*

It is therefore ORDERED:

1. The Verified Petition for Reinstatement is DENIED. Petitioner Charles H. Meier, Jr., Registration Number 23544, shall not be reinstated to the practice of law.

2. Petitioner is ORDERED to pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order, and Petitioner may submit a response within ten (10) days thereafter.